UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN GREGA, JR.,

              Plaintiff,

     v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.

_____

<u>DECISION & ORDER</u>

17-CV-6596P

## <u>PRELIMINARY STATEMENT</u>

Plaintiff John Grega, Jr., ("Grega") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 10). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Grega's motion for judgment on the pleadings is denied.

## DISCUSSION

### I.       Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)     whether the claimant is currently engaged in substantial gainful activity;

(2)     if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)     if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5)     if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    Grega's Contentions

Grega contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 8-1, 12). Initially, Grega argues that the ALJ failed to address all of his mental health impairments and improperly applied the so-called special technique in determining the severity of his mental impairments at steps two and three of the sequential analysis. (Docket ## 8-1 at 18-23; 12 at 1-4). Next, Grega maintains that the ALJ overlooked certain opinion evidence in the record and also erred by improperly evaluating the opinion evidence he did consider, all of which resulted in an RFC determination not supported by substantial evidence. (Docket ## 8-1 at 23-29; 12 at 4-10). Finally, Grega asserts that the Appeals Council failed to consider new and material evidence he submitted after the ALJ's decision. (Docket # 8-1 at 29-30).

## III.    Analysis

### A.    The ALJ's Consideration of Grega's Impairments at Steps Two and Three

I turn first to Grega's contention that the ALJ "failed to consider the combined effect" of his impairments at steps two and three of the sequential process. (*Id.* at 18).

### 1.    **The ALJ's Step Two Determination**

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  It is the claimant's burden to present evidence demonstrating severity at step two.  *See Briggs v. Astrue*, 2011 WL 2669476, *3 (N.D.N.Y.), *report and recommendation adopted*, 2011 WL 2669463 (N.D.N.Y. 2011).  "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (internal quotation omitted); *see also Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimis* limitation to a claimant's physical or mental ability to do basic work activities").

Moreover, "[i]t is quite clear from the[] regulations that 'severity' is determined by the *limitations* imposed by an impairment, and not merely [by its] diagnosis." *Wahrmann v. Comm'r of Soc. Sec.*, 2014 WL 4626487, *5 (N.D.N.Y. 2014) (emphasis supplied).  "The Second Circuit has held that an argument that an ALJ should have found an impairment severe is 'without merit' when the claimant 'did not furnish the ALJ with any medical evidence showing how these alleged impairments limited his ability to work.'" *Quiles v. Colvin*, 2015 WL 13729877, *11 (D. Conn. 2015) (citing *Britt v. Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) (summary order)), *report and recommendation adopted by*, 2016 WL 543102 (D. Conn. 2016); *accord Wahrmann v. Comm'r of Soc. Sec.*, 2014 WL 4626487 at *5 ("[t]he presence of an

impairment is not in and of itself disabling within the meaning of the [Social Security] Act")
(alterations and quotations omitted).

Here, the ALJ found at step two that Grega had the severe impairments of
post-traumatic stress disorder ("PTSD"), anxiety disorder, obsessive-compulsive disorder
("OCD"), tremors, lumbar degenerative disc disorder, and shoulder right dysfunction.  (Tr. 14).[1]
The ALJ also found that Grega's history of substance abuse constituted a non-severe impairment.
(*Id.*).  The ALJ concluded his step two analysis by stating that "all impairments (severe and
non-severe) have been considered in determining [Grega's] [RFC] and all medically supported
limitations have been incorporated into that finding."  (*Id.*).

With regard to Grega's mental health impairments, Grega faults the ALJ for "not
consider[ing] evidence of anxiety, OCD, panic, mood, somatoform and personality disorder(s)
even though doctors diagnosed, and found limiting effects."  (Docket # 8-1 at 20).  Initially, it is
clear that the ALJ considered evidence of Grega's anxiety and OCD, as he found those
impairments to be severe.  Moreover, the records cited by Grega to show the "limiting effects" of
the other mental health disorders do not provide evidence of functional limitations associated
with the impairments.  (*See id.* at 20 n.29).  Rather, those notes are treatment notes from various
providers, and although they demonstrate that Grega was diagnosed with disorders in addition to
those explicitly considered by the ALJ at step two, they do not support Grega's argument that
each of his mental health impairments qualified as a "severe" impairment.  *See*, *e.g.*, *Quiles v.
Colvin*, 2015 WL 13729877 at *11-12 ("[t]he record shows that [p]laintiff has a medical history
of carpal tunnel syndrome; however, the record does not support [p]laintiff's position of
severity[;] [p]laintiff has failed to point to evidence demonstrating that her carpal tunnel

---

[1] References to page numbers in the Administrative Transcript (Docket # 6) utilize the internal
Bates-stamped pagination assigned by the parties.

syndrome has limited her ability to do work[;] . . . [w]ith respect to major depressive disorder, again, there is evidence in the record that [p]laintiff has a history of depression and anxiety, but no evidence that it results in functional limitations").[2] On this record, I find that the ALJ's severity determination with respect to Grega's mental health issues is supported by substantial evidence.

In any event, the ALJ's RFC discussion indicates that he considered the vast majority of the symptoms exhibited by Grega that he associates with the other disorders, including Grega's reports of "rocking" due to anxiety, nightmares and difficulty with sleep, depression, cycles of loss [of] and increased appetite, social withdrawal, irritability, loss of interest, diminished self-esteem and fatigue, as well as reports of panic attacks and memory issues. (*Compare* Docket # 8-1 at 21 *with* Tr. 17). The ALJ also found that a CT scan of Grega's head performed on December 14, 2012, and an MRI of his brain conducted on March 14, 2013, revealed normal results. (Tr. 19 (citing Tr. 499-500, 761)). A review of the ALJ's RFC determination demonstrates that he accounted for Grega's issues dealing with anxiety and social interactions, and memory issues. (Tr. 22). Accordingly, I find that any severity error committed by the ALJ at step two relating to Grega's mental health impairments was harmless. *See, e.g.*, *Newell v. Colvin*, 2016 WL 4524809, *12 (W.D.N.Y. 2016) ("[the court] agree[s] with [claimant] that the record demonstrates that she was diagnosed with PTSD by several different medical sources and that the ALJ should have considered all of [claimant's] diagnosed mental impairments, including her PTSD, in conducting his step two severity analysis[;] [n]evertheless, [the court] find[s] the ALJ's failure to do so in this case was harmless because the ALJ expressly considered the medical evidence of record, including [claimant's] PTSD diagnosis, in his

---

[2] To the extent that Grega cites opinion evidence containing functional limitations, for the reasons discussed at length below, I conclude that the ALJ did not err in weighing those opinions.

decision and considered the combined impact that [claimant's] mental impairments had on her

functioning in assessing her RFC and evaluating her ability to perform work[;] . . . [claimant]

fails to identify any actual symptoms or functional limitations she suffers as a result of the PTSD

diagnosis that were not considered by the ALJ"); *Rye v. Colvin*, 2016 WL 632242, *4 (D. Vt.

2016) ("[claimant] asserts that the ALJ should have also considered, at step two, whether [the]

following additional impairments were severe: asthma, personality disorder, insomnia, PTSD,

limited cognitive ability, and degenerative disc disease[;] [claimant] does not specify why each

of these impairments meets the regulatory definition of a 'severe' impairment[;] [i]n any event,

the [c]ourt finds that any error the ALJ may have made at step two was harmless, given that the

ALJ continued with the sequential analysis, considering all of [claimant's] alleged impairments

in combination and accounting for them in his RFC determination"); *Wahrmann*, 2014 WL

4626487 at *6 ("[o]ften when there are multiple impairments, and the ALJ finds some, but not all

of them severe, an error in the severity analysis at Step 2 may be harmless because the ALJ

continued with the sequential analysis and did not deny the claim based on the lack of a severe

impairment alone").

      Grega also argues that the ALJ "failed to evaluate diagnoses of pre-Parkinson's,

diabetes, headaches, regional myofascial disorder and symptoms properly in step two and

subsequent sequential steps."  (Docket # 8-1 at 22).  For largely the same reasons discussed

above, I find Grega's argument without merit.

      Specifically, although the record contains references to these conditions, Grega

has not shown how they qualify as severe impairments.  *See Taylor v. Astrue*, 32 F. Supp. 3d

253, 265 (N.D.N.Y. 2012) ("the mere presence of a disease or impairment, or establishing that a

person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to

render a condition severe") (quotations omitted).  In any event, the ALJ explicitly limited Grega to only occasional overhead reaching with his right dominant arm as a result of right shoulder pain and occasional bilateral fingering as a result of tremors (Tr. 16-17), and Grega has not indicated how his diagnoses of pre-Parkinson's or regional myofascial disorder would result in greater functional limitations.  Therefore, any failure by the ALJ to explicitly account for these conditions at step two was harmless error.  *See*, *e.g.*, *Howell v. Berryhill*, 2018 WL 3429278, *3 (W.D.N.Y. 2018) ("[the ALJ] included in the RFC finding a limitation of [p]laintiff's ability to stand or walk, accounting for [p]laintiff's knee pain[;] [p]laintiff has not shown any other limitations that should have been assessed as a result of either his migraines or knee pain, and has therefore failed to demonstrate that [the] ALJ['s] omission of migraines and Osgood-Schlatter's disease at step two had any meaningful impact on the remainder of his analysis, or that explicitly considering these impairments at step two would or could have resulted in a different outcome[;] [a]ccordingly, the [c]ourt finds that any error by [the] ALJ at step two was harmless and does not necessitate remand").  In addition, as discussed above, despite experiencing headaches, objective test results showed no abnormalities with Grega's head or brain, nor has Grega demonstrated that they give rise to work-related limitations.  (Tr. 19 (citing Tr. 499-500, 761)).  Finally, Grega has not demonstrated how his diabetes limits his ability to work.

Accordingly, I find that Grega has not met his burden at step two to show the severity of these impairments, *see Briggs v. Astrue*, 2011 WL 2669476 at *3, and thus find no error in the ALJ's evaluation of these impairments.

## 2.    The ALJ's Step Three Determination

Grega argues that the ALJ erred at step three of the sequential analysis by failing to consider whether Grega's mental health impairments met the requirements of specific listings – 12.07 (somatoform disorder), 12.08 (personality disorder), and 12.15 (trauma- and stressor-related disorder) – described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Docket # 8-1 at 20 ("[t]he ALJ indicated he considered listings 12.04 and 12.06, however, he did not consider listings 12.07, 12.08, 12.15, or severity of MH disorders, as severe or non-severe impairments, and all relevant evidence[;] [the ALJ] failed to consider disorder listings or effects")).  The Commissioner responds that the ALJ appropriately considered Grega's limitations under listings 12.04 (affective disorder) and 12.06 (anxiety-related disorder) and that Grega cannot show that he would have qualified as disabled under the other listings he identifies. (Docket # 10-1 at 17-18).  I agree with the Commissioner.

The claimant bears the burden to prove that his or her impairments meet or equal a listing.  *See Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006) ("[i]t must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements").  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990).

The medical criteria for both listings 12.04 and 12.06 relate to mental impairments, "meaning the ALJ must use the 'special technique' delineated in 20 C.F.R. §§ 404.1520a, 416.920a to assess whether they met the listings."  *Fitzpatrick v. Berryhill*, 2018 WL 1040081, *8 (S.D.N.Y.), *report and recommendation adopted by*, 2018 WL 1027438 (S.D.N.Y. 2018).  Under the so-called special technique, "[f]irst, the reviewing authority

evaluates whether the claimant's symptoms implicate a medically determinable impairment." *Id.*

"Second, 'the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.'" *Id.* (quoting *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008)). "If the claimant's degree of functional limitation is marked in two of these categories, or extreme in one, the claimant meets the criteria in Paragraph B of the listing." *Id.* "Alternatively, a mental disorder meets the criteria in Paragraph C of the listing if it is 'serious and persistent,' there is medical treatment or a highly structured setting, *and* minimal capacity to adapt to changes in the claimant's environment." *Id.*

Here, the ALJ discussed each of the paragraph B factors and cited evidence in the record in support of each consideration. First, in activities of daily living, the ALJ found Grega had "mild restriction[s]." (Tr. 15). In support of this determination, the ALJ cited to the consultative reports of internist Dr. Harbinder Toor ("Toor") and psychologist Dr. Adam Brownfield ("Brownfield"), which noted that although Grega avoided taking public transportation due to his anxiety, he was still able to prepare food, clean, do laundry, manage money, and drive. (*Id.* (citing Tr. 1071-72, 1075)).

Second, regarding social functioning, the ALJ concluded that Grega had "moderate difficulties." (Tr. 15). The ALJ's determination was supported by Grega's report to Brownfield that he was "nervous around a lot of people, and other people irritate[d] him." (*Id.* (citing Tr. 1071)). Grega also reported to Brownfield that, at the time of his evaluation on September 10, 2013, he did not have a social life or relationship with his family. (*Id.* (citing Tr. 1071-72)). The ALJ also cited a treatment note from addictions therapist Eric Strauser,

CASAC, dated May 25, 2011, in which Grega noted that he was estranged from his family members and emotionally distant from his children. (*Id.* (citing Tr. 1021)). In addition, the ALJ referred to Grega's hearing testimony, in response to the ALJ's question about whether he had trouble being around people, that he had "lost [his] cool with somebody," which resulted in his incarceration. (Tr. 15-16 (citing Tr. 245)).

Third, with respect to concentration, persistence or pace, the ALJ determined that Grega had "moderate difficulties." (Tr. 16). The ALJ supported this determination by citing Brownfield's opinion that Grega's intellectual functioning was in the average range, and that Grega's attention and concentration were intact, as he was able to count, do simple calculations, and serial threes. (*Id.* (citing Tr. 1071)). The ALJ noted that Grega's recent and remote memory skills were mildly impaired due to emotional distress caused by anxiety, that he was moderately limited in appropriately dealing with stress, which was caused by psychiatric symptoms, and that Grega had difficulty concentrating while reading. (*Id.* (citing Tr. 245-46, 1071-72)). The ALJ reasoned, based on Brownfield's opinion, that Grega showed no limitations in following and understanding simple directions and instructions. (*Id.* (citing Tr. 1072)).

Next, the ALJ noted that Grega had experienced no known episodes of decompensation for an extended duration. (Tr. 16). In addition, the ALJ determined that Grega did not meet the "paragraph C" criteria for listings 12.04 and 12.06. (*Id.*).

Based on the ALJ's analysis, which is supported by Grega's treatment notes and hearing testimony, as well as medical opinions in the record, I find that the ALJ properly applied the so-called special technique and that his determination that Grega's mental impairments did not meet or medically equal either listing 12.04 or 12.06 is supported by substantial evidence. *See Sweet v. Comm'r of Soc. Sec.*, 2016 WL 11478205, *3 (N.D.N.Y.) ("[u]nder the substantial

evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[;] [p]laintiff must show that no reasonable factfinder could have reached the ALJ's conclusion based on the evidence in record"), *report and recommendation adopted by*, 2016 WL 4401374 (N.D.N.Y. 2016).

       I also find that any error the ALJ committed by not explicitly discussing listings 12.07 or 12.08 is harmless.[3] Those listings have the exact same paragraph B requirements as listings 12.04 and 12.06. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B), *with* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.07(B), 12.08(B).[4] Thus, because the ALJ clearly found that Grega's mental impairments did not meet the requirements of paragraph B for listings 12.04 and 12.06, he implicitly determined that Grega's impairments did not meet the criteria for listings 12.07 or 12.08. *See*, *e.g.*, *Cote v. Berryhill*, 2018 WL 4092068, *12-13 (D. Conn. 2018) ("[e]ach of the listings that <u>were</u> considered by the ALJ (Listings 12.02 and 12.06) has the same paragraph B criteria as the listings plaintiff argues <u>should</u> have been considered (Listings 12.08 and 12.10)[;] . . . [a]s a result, the ALJ did not err in failing to explicitly consider Listings 12.08 and 12.10[;] [t]he ALJ assessed the paragraph B criteria for Listings 12.02 and 12.06, which are the same for Listings 12.08 and 12.10, and the ALJ's assessment of that criteria is supported by substantial evidence"); *Sweet v. Comm'r of Soc. Sec.*, 2016 WL 11478205 at *3 ("[a]ny error the ALJ may have made in failing to specifically discuss Listing 12.04 was harmless because the

---

[3] The Commissioner is correct that listing 12.15 did not become effective until January 17, 2017, nearly eleven months after the ALJ's decision. (Docket # 10-1 at 17-18); *see O'Dell v. Colvin*, 2016 WL 6882861, *16 n.28 (S.D.N.Y. 2016). Therefore, the ALJ did not err in failing to analyze Grega's limitations under that listing.

[4] At the time of the ALJ's decision, paragraph B of listings 12.04, 12.06, 12.07, and 12.08 required a finding of at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B), 12.07(B), 12.08(B).

criteria outlined in 12.04(B) is identical to the paragraph (B) criteria of Listing 12.02 and 12.04 and the criteria in 12.04(C) is identical to the (C) criteria of 12.02(C)[;] [t]herefore, because the ALJ's determination that the record did not support a finding that [p]laintiff met the paragraph (B) and (C) criteria of Listings 12.02 and 12.06, the same reasoning, when applied to Listing 12.04, would reach the result that [p]laintiff did not meet Listing 12.04"); *Rye v. Colvin*, 2016 WL 632242 at *5-6 ("[b]ecause the ALJ assessed the paragraph B criteria for Listing 12.04, and that criteria is the same for Listing 12.08, and because the ALJ's assessment of that criteria is supported by substantial evidence, the ALJ did not err in failing to explicitly consider Listing 12.08 at step three").

Accordingly, remand is not warranted based on the ALJ's step three determination.

**B.    The ALJ's Consideration of Opinion Evidence**

I turn next to Grega's contention that the ALJ erred in his consideration of opinion evidence.  Specifically, he first argues that the ALJ "failed to address and explain the weight he accorded" to records from five separate medical sources, all of which Grega contends constitute medical opinion evidence.  (Docket ## 8-1 at 24-25; 12 at 5).  Grega also maintains that the ALJ rejected restrictive portions of Toor's and Brownfield's opinions, particularly with respect to Grega's stress-based limitations, without providing adequate explanations.  (Docket ## 8-1 at 27-29; 12 at 4-5, 6-7).

The Commissioner responds that the records not explicitly considered by the ALJ are not "medical opinions," as defined in the relevant regulations, and the ALJ thus did not commit error by not explaining and weighing the evidence.  (Docket # 10-1 at 27-28).  The Commissioner also argues that the ALJ properly evaluated and weighed the five opinions

referenced in the ALJ's decision.  (*Id.* at 22-27).  I address each of Grega's arguments regarding the ALJ's consideration of opinion evidence below.

According to the regulations, an ALJ "will always consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence" in determining whether a claimant is disabled, and "will evaluate every medical opinion" received.  20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c).[5]  In evaluating medical opinions, regardless of their source, the ALJ should consider the following factors:

(1)  the frequency of examination and length, nature, and extent of the treatment relationship,

(2)  the evidence in support of the physician's opinion,

(3)  the consistency of the opinion with the record as a whole,

(4)  whether the opinion is from a specialist, and

(5)  whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) ("[t]hese factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts"); *House v. Astrue*, 2013 WL 422058, *2 (N.D.N.Y. 2013) ("[m]edical opinions, regardless of the source, are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)").

The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and

---

[5]  The regulations cited herein reference the versions in effect at the time of the ALJ's decision on February 25, 2016.

prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  "Medical opinions do not include the results of objective tests, such as any clinical or diagnostic techniques," and they "differ from mere treatment notes, which merely list the symptoms detailed by the [p]laintiff and/or tests performed by the doctor."  *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 766 (S.D.N.Y. 2018) (citations and quotations omitted).  "They instead must reflect a judgment with regard to the nature and severity of plaintiff's limitations beyond a mere diagnosis and description of the symptoms."  *Id.* (quotations omitted); *see*, *e.g.*, *Mushtare v. Colvin*, 2015 WL 3901981, *5 (N.D.N.Y. 2015) ("the treatment notes of [plaintiff's doctors] contain records of symptoms and diagnoses but are devoid of judgments regarding what [p]laintiff can or cannot do relative to his diagnoses and symptoms[;] [a]ccordingly, these treatment notes do not constitute medical opinions warranting the ALJ's consideration in support of her disability determination").

Here, Grega claims that the ALJ committed error by not analyzing records from five separate medical sources as medical opinion evidence.  The first is a note authored by psychologist Anastasia Zyuban ("Zyuban") and co-signed by clinical psychologist Mark W. Lawson ("Lawson"), PhD, on April 17, 2013.  (Docket # 8-1 at 24 n.39 (citing Tr. 556-59)).[6] The note detailed Grega's chief complaint and symptoms as of April 16, 2013, which included Grega's reports of "feeling anxious, experiencing 'mood swings,' rocking, fidgeting, and twitching of hands."  (Tr. 556).  Grega also reported "experiencing a pressing need for everything around to 'be perfect' and explained that when something is not right, he has to fix it immediately[.]"  (*Id.*).  The note described the results of a mental status exam and diagnostic impressions, and certain test results administered "in an effort to ascertain diagnostic information

---

[6]  Grega also cites to the identical record appearing later in the transcript.  (*Compare* Tr. 556-59 *with* Tr. 1132-35).

regarding [Grega's] personality and emotional functioning," which produced an "invalid profile due to grossly inflated scores."  (Tr. 556-58).

Second, Grega cites two records regarding psychological treatment with graduate psychology student Ryan Mekota ("Mekota"), who was under the supervision of clinical psychologist James T. Bridges ("Bridges"), PhD.  (Docket # 8-1 at 24 n.40 (citing Tr. 1154-60)). On January 17, 2014, Grega presented for a psychological evaluation for the purpose of verifying bipolar disorder.  (Tr. 1156).  The note detailed test results, findings based on those results, and Bridges's evaluation of Grega, diagnostic considerations, and treatment recommendations. Specifically, the treatment note stated, among other things, that, as a result of his anxiety and PTSD, Grega may acquiesce to others in basic decision-making and have difficulty forming adaptive social relationships.  (Tr. 1158).  Bridges also concluded that an "[a]ccurate assessment of bipolar disorder [was] not possible because of [Grega's] current level of distress and inconsistent self-report[ing]."  (*Id.*).

The second note summarized a therapy session between Grega and Mekota and Bridges on January 21, 2014.  (Tr. 1154-55).  Specifically, Mekota noted that Grega appeared anxious and exhibited "body rocking," but was "slightly less anxious than previous sessions." (Tr. 1154).  Mekota also summarized his conversation with Grega, which centered on Grega's recent move to a new apartment.  (Tr. 1154-55).  After Grega stated "his concerns over paying his bills and obtaining income," he was "informed that his persistently elevated anxiety and inability to cope with his distress preclude[d] him from being able to manage the demands and responsibilities associated with employment at this time."  (Tr. 1155).

Third, Grega contends that a March 28, 2013 note from his primary care physician, Dr. Michael Michotek ("Michotek"), deserved to be treated as a medical opinion.

(Docket # 8-1 at 25 n.41 (citing Tr. 588-91)).  The note detailed Grega's symptoms at the time of

the appointment, notably, mood disorder, tremor, delusional thought disorder, and chronic

headaches, and provided an overview of Grega's medications at that time.  (Tr. 588-90).

Michotek summarized the results of his physical examination of Grega and provided his

diagnoses and assessment of Grega's conditions, including his assessment that Grega's mood

disorder appeared "severe/complex with disability."  (Tr. 591).

　　　　Grega also cites two notes from neurologist Karen Mead ("Mead"), MD.  (Docket

# 8-1 at 25 n.42 (citing Tr. 587-88, 630-32)).  The first note, dated March 4, 2013, reveals that

Mead was consulted "because of a movement disorder."  (Tr. 631).  Mead noted Grega's

diagnoses and medications, the results of a physical examination, and her impression that she

"d[id] not think that this [was] a specific neurologic condition but rather [was] anxiety driven."

(Tr. 632).  On follow-up on March 28, 2013, Mead explained that, based on her review of a

recent MRI, "there [was] nothing to suggest" that Grega's rocking behavior was due to any

"neurodegenerative disorder or a frontotemporal lobar degeneration."  (Tr. 587).  Rather, Grega's

movement disorder "appear[ed] to be a lifelong problem, now worsening."  (*Id.*).  Mead noted

that "this type of behavior can also be made worse[] by fatigue, stress and anxiety, and . . . often

doesn't wax and wane and [is] not easily suppressible other than if [some triggers] can [be]

eliminate[d]."  (*Id.*).

　　　　Finally, Grega points to a note from mental health social worker Daphne Smith

("Smith"), LCSW.  (Docket # 8-1 at 25 n.43 (citing Tr. 690)).  The note reflects Smith's

diagnosis of PTSD and identified Grega's symptoms.  (Tr. 690).

　　　　The records described above do not detail Grega's functional limitations based on

his diagnoses and symptoms, and, in the Court's view, constitute treatment notes.  As explained

18

above, these notes list Grega's symptoms and diagnoses or diagnostic impressions, detail certain tests administered and explain results, and describe various treatment plans, which, without more, are not considered medical opinions. *See*, *e.g.*, *Bailey v. Berryhill*, 2017 WL 1102671, *2-3 (S.D.N.Y. 2017) (concluding that medical reports documenting plaintiff's medical history, the results of physical and neurological examinations, treatment and treatment plans, diagnoses, without assessing the functional limitations associated with plaintiff's impairments, did not constitute medical opinions within the meaning of 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)). Critically, the reports cited by Grega do not contain "judgments regarding what [Grega] can or cannot do relative to his diagnoses and symptoms." *See Mushtare v. Colvin*, 2015 WL 3901981 at *5. Therefore, the ALJ was not required to consider these notes as medical opinions in accordance with the relevant regulations.[7]

Grega also argues that the ALJ improperly evaluated the medical opinion evidence in the record, particularly the opinions of Toor and Brownfield. (*See* Docket # 8-1 at 27 ("the ALJ failed to adopt in full the consultative medical opinions of [Toor] and [Brownfield] using his own lay opinion and without proper explanation"); *see also id.* at 28 ("[t]he ALJ improperly ignored restrictive findings of [Toor] and [Brownfield][;] . . . [t]he ALJ failed to sufficiently explain why he rejected portions of [Toor's] uncontradicted opinion")).

Toor conducted a consultative internal medicine examination of Grega on September 10, 2013. (Tr. 1074-77). Grega presented with complaints of PTSD, OCD, anxiety, depression, insomnia, tremors, and "possible early Parkinson's." (Tr. 1074). Grega also

---

[7] To the extent that Bridges's and Mekota's opinions that Grega's anxiety and PTSD would likely affect his ability to meet the demands of work could be considered opinion evidence, I find that the ALJ adequately accounted for those limitations in his RFC determination. Moreover, "[a]n ALJ does not have to state on the record every reason justifying a decision," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted).

reported pain in the lower back, which resulted in difficulty standing, walking, sitting, bending, and lifting. (*Id.*). Toor noted that Grega cooked three days per week, cleaned daily, shopped and did laundry twice per week, showered and dressed daily, watched television, and "goes out." (Tr. 1075). Toor opined that Grega had "moderate limitations for standing, walking, bending, and lifting," and that Grega's early Parkinson's and pain could interfere with his balance. (Tr. 1077). In addition, due to Grega's tremors, he also had "mild to moderate limitations for grasping, holding, writing, tying a shoelace, zipping a zipper, buttoning a button, manipulating a coin, or holding objects." (*Id.*). The ALJ examined this opinion at length, and afforded it "partial weight," reasoning that it was "consistent with the medical evidence of record and consistent with [Grega's] own reported symptoms." (Tr. 19).

The Court notes that Grega does not explain his argument that the ALJ rejected restrictive portions of Toor's opinion. To the extent Grega's argument may be read to suggest that remand is warranted because the ALJ did not account for Toor's opinion that Grega had "moderate limitations for standing, walking, bending, and lifting," I reject that suggestion.

Here, the ALJ's RFC determination limited Grega to "light work" with, among other limitations, only "occasional bilateral fingering." (Tr. 16-17). As an initial matter, although some courts have found that moderate limitations for exertional work activities such as prolonged sitting, walking, standing, lifting, pushing, and pulling may be inconsistent with an ability to perform the full range of light work, other courts have concluded otherwise. *See Alianell v. Colvin*, 2016 WL 981864, *13 (W.D.N.Y. 2016) ("[s]ome courts, including this [c]ourt, have held that 'an opinion assessing moderate limitations for sitting, standing and walking [is not necessarily] inconsistent with a determination that [a] claimant can perform the requirements of light or medium work,' while other courts have held that 'moderate or severe

limitations in prolonged walking are inconsistent with full range light or medium work'")

(quoting *Harrington v. Colvin*, 2015 WL 790756, *14 (W.D.N.Y. 2015) (collecting cases));

*Gurney v. Colvin*, 2016 WL 805405, *3 (W.D.N.Y. 2016) (moderate physical limitations

identified by physician were accounted for by limitation to light work) (collecting cases).

Considering the ALJ's RFC determination, it is not clear that he rejected the

restrictive portions of Toor's opinion. In any event, I find that Grega's ability to engage in the

exertional requirements of light work is supported by substantial evidence in the record, and the

ALJ provided reasons supporting "the finding that, despite the moderate limitations[,] . . .

[plaintiff] could still perform light work." *See Carroll v. Colvin*, 2014 WL 2945797, *4

(W.D.N.Y. 2014).

Specifically, the ALJ cited to Grega's self-reported ability to perform activities of

daily living, such as his ability to take care of himself and his personal hygiene, and his ability to

engage in hobbies, such as bowling and going to the gym; reliance on this evidence was not

error. (*See id.* (citing Tr. 1072)); *see* 20 C.F.R. § 416.929(c)(3) (a claimant's "pattern of daily

living" is an "important indicator of the intensity and persistence of [the claimant's] symptoms").

Moreover, the ALJ relied on medical evidence of record in arriving at the physical portion of

Grega's RFC, such as a lumbar spine x-ray taken of Grega's back on September 2, 2015. (Tr. 18

(citing Tr. 1326)). As the ALJ accurately noted, the x-ray revealed no fracture and no significant

anterior or posterior translation with flexion or extension. (Tr. 1326).

On this record, I find that the ALJ's physical RFC determination is supported by

substantial evidence and that the ALJ did not err in evaluating Toor's consultative opinion.

I also find no error in the ALJ's evaluation of Brownfield's consultative opinion.

Brownfield conducted a psychiatric evaluation of Grega on September 10, 2013. (Tr. 1069-73).

Brownfield noted Grega's past psychiatric hospitalization history, which included admission at the Bath VA Hospital from November 2012 until April 2013 for symptoms of PTSD, OCD, and depression, and noted his current treatment for psychiatric issues, which included weekly counseling sessions at the Bath VA Hospital. (Tr. 1069). Grega reported, among other things, "depressive symptoms of dysphoric mood, loss of usual interest, irritability, social withdrawal, diminished sense of pleasure, diminished self-esteem, and fatigue." (Tr. 1069-70). He also endorsed "anxiety, symptoms of excessive worry and irritability, nightmares, restlessness, and flashbacks, triggered by arguing, and loud noises as well as sudden noises." (Tr. 1070).

On mental status examination, Grega appeared well-groomed and exhibited appropriate eye contact, but his posture and motor behavior were restless, and he rocked back and forth in his chair. (Tr. 1070-71). His speech was fluent and clear, and his thought process was coherent and goal directed. (Tr. 1071). Grega's affect was anxious and his mood was dysthymic, yet he was oriented, had intact attention, concentration, and only mildly impaired memory skills. (*Id.*). He had average cognitive functioning and fair insight and judgment. (*Id.*).

Grega reported that he was able to dress, bathe, and groom himself, cook and prepare food, clean, do laundry, manage money, and drive. (*Id.*). He could not take public transportation because of his anxiety, and he stated that he was "nervous around a lot of people, and other people irritate him easily," although he was able to go shopping. (*Id.*). His hobbies were bowling and going to the gym, and he spent his days watching television and staying home. (Tr. 1072). Although he enjoyed building things with his hands, he reported that he was no longer able to do so because of his "pre-Parkinson['s]." (*Id.*).

In his medical source statement, Brownfield found that there was "no evidence of limitation in following and understanding simple directions and instructions, performing simple

tasks independently, and maintaining attention and concentration." (*Id.*). Brownfield opined that Grega was "mildly limited in maintaining a regular schedule, learning new tasks, performing complex tasks independently, but d[id] not require supervision, making appropriate decisions . . . , and relating adequately with others." (*Id.*). He also opined that Grega was "moderately limited in appropriately dealing with stress," and that Grega's difficulties were caused by psychiatric symptoms. (*Id.*). Brownfield stated further that the results of the evaluation "appear[ed] to be consistent with psychiatric problems, but in themselves, they d[id] not appear to be significant enough to interfere with [Grega's] ability to function on a daily basis," and that Grega's prognosis was "good." (*Id.*).

The ALJ accorded Brownfield's opinion "great weight." (Tr. 20-21). He found that the opinion was "consistent with the longitudinal record, the clinical diagnosis, and [Grega's] own allegations." (Tr. 21). The ALJ noted that the RFC accounted for Grega's memory issues by limiting Grega to simple, routine tasks, and for his irritability problems around others by limiting him to no interaction with the general public and only occasional interaction with coworkers. (*Id.*).

Grega argues that the ALJ erred by failing to account for the moderate stress limitations opined by Brownfield. I disagree. "[W]hen determining whether mentally impaired individuals will be able to adapt to the stress-related demands of the workplace, the ALJ is required to make a thorough, individualized RFC evaluation, focusing on the individual's ability 'to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" *Reyes v. Colvin*, 2016 WL 56267, *5 (W.D.N.Y. 2016) (quoting Social Security Ruling "SSR" 85-15, 1985 WL 56857, *4 (1985)).

Having reviewed the ALJ's decision, particularly his RFC assessment, I conclude that the ALJ complied with this requirement. "[E]ven without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations." *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019). "For example, an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations." *Id.* (collecting cases).

Here, the ALJ included limitations in his RFC determination for "simple, routine tasks, with no interaction with the general public, and only occasional interaction with co-workers." (Tr. 16-17). As noted above, Brownfield's opinion also found that despite moderate limitations in appropriately dealing with stress, Grega was still capable of following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently without supervision, making appropriate decisions, and relating adequately with others. I find that the ALJ adequately accounted for Grega's stress-related limitations as found by Brownfield. *See*, *e.g.*, *Jennifer Lee W. v. Berryhill*, 2019 WL 1243759, *4 (N.D.N.Y. 2019) (ALJ's RFC determination accounted for plaintiff's moderate to marked limitations in dealing with stress, where she could still "follow and understand simple instructions and directions, . . . maintain a regular schedule, and . . . had moderate limitations in her ability to relate to others"; "ALJ limited [p]laintiff to routine and repetitive tasks and stated that [p]laintiff cannot do tasks requiring public contact or more than occasional interactions with coworkers[;] [c]ourts have routinely held that RFC determinations account for a claimant's stress without specifically referencing a stress limitation") (quotations omitted); *see also Williams v.*

*Comm'r of Soc. Sec.*, 2018 WL 4443173, *6 (W.D.N.Y. 2018) ("[i]n his decision, the ALJ discussed Brownfield's opinion at length and explicitly acknowledged that Brownfield had assessed that [plaintiff] suffered from significant limitations in her ability to cope with stress[;] . . . [t]he ALJ reasoned that Brownfield, despite assessing that [plaintiff] had difficulty dealing with stress, concluded that she was generally capable of performing simple tasks independently, relating adequately with others, and maintaining attention, concentration and a regular schedule[;] [i]n formulating the RFC, the ALJ thus accounted for Brownfield's assessment by limiting [plaintiff] to simple work involving routine tasks"); *Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) ("[w]ith respect to [consultative examiner's] opinion that plaintiff is moderately limited with respect to stress, [the court] find[s] that the ALJ largely accounted for such limitation in her RFC finding[;] [t]he RFC limited plaintiff to simple, unskilled tasks with no more than occasional changes in the work setting and without an hourly, machine-driven assembly line production rate"); *Cosme v. Colvin*, 2016 WL 4154280, *12-13 (W.D.N.Y. 2016) (ALJ's RFC finding adequately accounted for plaintiff's stress-related limitations where ALJ limited plaintiff to "positions involving unskilled work that did not require any contact with coworkers or the public and only limited contact with supervisors") (footnote omitted); *Steffens v. Colvin*, 2015 WL 9217058, *4 (W.D.N.Y. 2015) ("the RFC finding requiring low contact with coworkers and the public adequately accounted for plaintiff's stress").

In sum, I find that the ALJ appropriately accounted for Grega's stress-based limitations and that remand is not warranted on this basis. *See Reyes v. Colvin*, 2016 WL 56267 at *6 ("although the ALJ did not specifically include stress limitations in his RFC assessment, his reliance on the findings and observations of the consultative medical sources in terms of their consideration of plaintiff's stress-related functional limitations . . . represents the kind of

thorough, individualized mental RFC evaluation contemplated by . . . the overall requirements of the [regulations]").

Grega's remaining contentions regarding the ALJ's evaluation of medical opinion evidence are conclusory and difficult to decipher. For instance, in one sentence, Grega argues that "[t]he ALJ improperly accorded 'great' weight to Dr. Selesner, SARP, as his one-time written findings are not consistent with the severity of conditions considering the record as a whole." (Docket # 8-1 at 28 (citing Tr. 1-1327)). Aside from citing the entire transcript, Grega does not elucidate the basis for his contention. In any event, it is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Gamble v. Comm'r of Soc. Sec.*, 2016 WL 4491710, *5 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 4487780 (N.D.N.Y. 2016).

Similarly, Grega argues in passing that the record evidence supported the October 26, 2015 opinion of Susan Petrillo ("Petrillo"), LCSW. (Tr. 1315-20); (*see* Docket # 8-1 at 22 ("Therapist Petrillo also found functional limitations in basic mental demands that conflict with light and competitive work and is supported by record"); *id.* at 26 ("[t]he ALJ . . . improperly [gave] diminished weight to [Petrillo's opinion,] [which was] well-supported, and [formulated] . . . over a period of time")). This challenge, "[a]t best, . . . [is] premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about [Grega's] mental impairments." *Torres v. Comm'r of Soc. Sec.*, 2017 WL 318845, *5 (N.D.N.Y. 2017).

Although "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision," he is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v.*

*Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  Furthermore, the ALJ is "not

require[d] . . . [to] mention[] every item of testimony presented to him or . . . explain[] why he

considered particular evidence unpersuasive or insufficient to lead him to a conclusion of

disability."  *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

The ALJ discussed Petrillo's opinion at length and afforded it "limited weight."

(Tr. 21).  In arriving at this decision, the ALJ noted that Petrillo, as a licensed clinical social

worker, was not an "acceptable medical source" under the regulations, and that Grega's

treatment history and testimony regarding his activities of daily living did not support the

extreme restrictions opined by Petrillo on the form she used.  (*Id.*).  Upon review of Petrillo's

opinion, I find that the ALJ adequately considered Petrillo's opinion in conjunction with the

other mental health opinions in the record and made an RFC determination that was supported by

substantial evidence.

Therefore, I find that remand is not warranted based on the ALJ's consideration

and weighing of the medical opinions in the record.

C.     **Grega's Submission of Additional Evidence to the Appeals Council**

Finally, Grega contends that remand is warranted because the Appeals Council

failed to properly consider additional evidence he submitted after the ALJ's decision, but prior to

the Appeals Council's denial of his request for review of that decision.  (Docket # 8-1 at 29-30).

Specifically, Grega submitted records from the Canandaigua VA Medical Center, dated

December 20, 2016 to March 24, 2017 (Tr. 29-141), and from the Bath VA Medical Center,

dated December 19, 2016 to February 1, 2017 (Tr. 142-214).

The Appeals Council acknowledged receipt of this evidence, but found that

because the ALJ "decided [Grega's] case through February 25, 2016[,] [t]his additional evidence

d[id] not relate to the period at issue." (Tr. 2). The Appeals Council thus determined that the additional evidence did "not affect the decision about whether [Grega] w[as] disabled beginning on or before February 25, 2016." (*Id.*).

Grega contends that the Appeals Council should have accepted both sets of records because the evidence was new and material, "probative of the chronic nature and severity of existing conditions and ongoing treatment in structured setting(s)[,] and contradict[ed] the ALJ's RFC, credibility, and disability findings." (Docket # 8-1 at 30). Grega also argues that the additional evidence would have reasonably influenced the ALJ's decision because it "show[ed] [Grega] had uncontrolled [diabetes mellitus], HTN, and headaches and diagnosed prior to the ALJ decision" and because the ALJ "failed to consider the *progressive* and *chronic* nature of [mental health] and medical conditions." (*Id.*) (emphasis in original).

The Commissioner responds that the Appeals Council correctly determined that this evidence concerned Grega's conditions after the ALJ's decision and did not relate to the relevant period at issue. (Docket # 10-1 at 28-29).

"The Appeals Council must consider additional evidence that a claimant submits if the claimant can show good cause for not submitting it to the ALJ, it is new, material, and relates to the period on or before the ALJ's decision, and there is a reasonable probability that it would change the outcome of the decision." *Redic v. Comm'r of Soc Sec.*, 2019 WL 1512556, *3 (W.D.N.Y. 2019) (citing, *inter alia*, 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b)).

"Evidence is 'new' when it has not been considered previously in the administrative process," *Pferrer-Tuttle v. Colvin*, 2015 WL 5773524, *5 (W.D.N.Y. 2015), and when it is "not cumulative of what is already in the record," *Pennetta v. Comm'r of Soc. Sec.*, 2019 WL 156263, *3 (W.D.N.Y. 2019). Evidence is "material" when it is "relevant to the

claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." *Id.* (citing *Webb v. Apfel*, 2000 WL 1269733, *14 (W.D.N.Y.), *report and recommendation adopted by*, 2000 WL 1209385 (W.D.N.Y. 2000)); *accord Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("[n]ew evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative'[;] . . . [t]he concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently") (brackets and citation omitted). "If the Appeals Council fails to consider new, material evidence, the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *Davidson v. Colvin*, 2013 WL 5278670, *7 (N.D.N.Y. 2013) (quotations omitted).

　　　　The records submitted to the Appeals Council concern Grega's conditions as they existed from December 2016 through March 2017 and do not clearly refer to the relevant time period or suggest that they were meant to be retrospective in nature. Grega's rather conclusory argument to the contrary is unpersuasive. Therefore, the Appeals Council did not err in finding that this evidence did not relate to the period at issue. *See Pulos v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 352, 362 (W.D.N.Y. 2018) ("evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council"); *see also Collins v. Comm'r of Soc. Sec.*, 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) ("[w]hile documents generated after the ALJ's decision may bear upon the severity and continuity of impairments existing during the relevant period, if the new evidence concerns only the

claimant's condition after the relevant time period, a remand for consideration of this evidence is not appropriate") (citations and quotations omitted); *O'Connell v. Astrue*, 2013 WL 1337282, *4 (W.D.N.Y. 2013) ("new evidence is not material if it tends to establish only 'a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition'") (quoting *Cassera v. Sec'y of Health & Human Servs.*, 104 F.3d 355 (2d Cir. 1996)), *aff'd*, 558 F. App'x 63 (2d Cir. 2014) (summary order).


## **CONCLUSION**

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB and SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED**. Grega's motion for judgment on the pleadings **(Docket # 8)** is **DENIED**, and Grega's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**


*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
June 26, 2019